UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MILTON E. DEMPSEY,

 Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

 Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:19-cv-5

**OPINION**

  This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

  Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

  For the following reasons, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision will be **affirmed**.

**STANDARD OF REVIEW**

  The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making a decision and whether there exists in the record substantial evidence supporting that decision. *See*

*Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff filed an application for SSI on January 27, 2015, alleging that he had been disabled since April 1, 2012 as a result of his impairments of bipolar disorder, diabetes, and gastroparesis. (PageID.196.) Plaintiff was 28 years old at the time of the alleged onset date. (*Id.*) Plaintiff had previous work as a saw operator, a potato sorter, a poultry line worker, and an

industrial cleaner. (PageID.173–75.) Plaintiff's application was denied, and he requested a hearing before an Administrative Law Judge (ALJ). (PageID.214–16.)

On April 12, 2017, ALJ Lawrence Ragona conducted a hearing and received testimony from Plaintiff and Beverly K. Majors, an impartial vocational expert (VE). (PageID.165–93.) On August 29, 2017, ALJ Ragona issued a written decision finding that Plaintiff was not entitled to benefits because he was not disabled within the meaning of the Act. (PageID.44–51.) The Appeals Council denied Plaintiff's request for review on June 28, 2018. (PageID.30–33.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on January 4, 2019.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1]  1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.  If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since his application date,[2] the ALJ found that Plaintiff suffered from the following severe impairments: (1) major depressive disorder; and (2) bipolar disorder. (PageID.46.) The ALJ found that Plaintiff's diabetes mellitus was not a severe impairment, explaining as follows:

> The record reveals claimant has been diagnosed with and treated for diabetes mellitus. However, it has been noted that he does not take the prescribed medication regularly and does not follow the diet and exercise regimen recommended. Further, claimant does not keep follow-up appointments as directed (Exhibit 9-F/2). The progress notes reveal that when compliant with treatment, claimant's diabetes is improved and controlled (Exhibits 1-F, 2-F, 4-F, 9-F, 10-F).

---

[2] The proper inquiry in an application for SSI benefits is whether the claimant was disabled on or after the application date. *Casey v. Sec'y of Health & Human Servs.*, 987 F.3d 1230, 1233 (6th Cir. 1993).

> There is no evidence in the record that claimant's physical impairments cause more than minimal limitation on his ability to engage in work activity. As such, his diabetes is not a severe impairment as that term is defined in the Regulations.

(*Id.*)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.47-48.) The ALJ considered listing 12.04. Under paragraph B, plaintiff was required to prove one extreme limitation or two marked limitations in the following areas:

1. Understanding, remembering, or applying information;
2. Interacting with others;
3. Concentrating, persisting, or maintaining pace;
4. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B). The ALJ found that Plaintiff had mild limitations in the areas of understanding, remembering, or applying information and in adapting and managing himself and moderate limitations in the areas of interacting with others and concentration, persistence and pace. (PageID.47.) With regard to understanding, remembering, or applying information, the ALJ found that Plaintiff retained the mental capacity for simple, low stress work. The ALJ further found that if Plaintiff adhered to his treatment, his functional limitations would likely abate. (*Id.*)

The ALJ determined that Plaintiff retained the capacity to perform a full range of work at all exertional levels, but Plaintiff "could not perform complex work and could have only occasional interaction with others" and "is more comfortable working with things instead of people." (PageID.48.) In making his RFC finding, the ALJ gave "great weight" to the opinion of State

5

agency consultant Joseph Kahler, Ph.D., who found, among other things, that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (PageID.49, 200.)

The ALJ found that Plaintiff could not perform his past work. However, based on testimony from the VE, the ALJ found that there were approximately 1,730,900 jobs in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.50–51.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises three issues in his appeal. First, he argues that the ALJ's finding that his diabetes was a nonsevere impairment was not supported by substantial evidence. Plaintiff further argues that the ALJ erred in failing to include limitations from his diabetes in his RFC. Second, Plaintiff argues that the ALJ's findings regarding Plaintiff's mental limitations are not supported by substantial evidence. Finally, Plaintiff argues the ALJ failed to give the VE a complete hypothetical.[3]

---

[3] In his reply, Plaintiff further argues that the ALJ's finding that Plaintiff's symptoms improve when he takes his medication is contrary to SSR 82-59. (ECF No. 11 at PageID.987–88.) This argument "is waived because a reply brief is not the proper place to raise new arguments." *Palmer v. Comm'r of Soc. Sec.*, No. 1:17-cv-577, 2018 WL 4346819, at *7 (Aug. 9, 2018) (citing *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (en banc)), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 11, 2018). Even if Plaintiff had not waived the argument, it lacks merit. "Courts in this Circuit have found SSR 82-59 inapplicable 'in cases where the ALJ has considered the noncompliance as only one factor [in] assessing a claimant's credibility or in cases where no prior disability ruling was made ay an ALJ that was thereafter undone by a claimant's noncompliance with treatment recommendations.'" *Williams v. Comm'r of Soc. Sec.*, No. 3:13 CV 1276, 2014 WL 1406433, at *13 (N.D. Ohio Apr. 10, 2014) (quoting *Kinter v. Colvin*, No. 5:12 CV 490, 2013 WL 1878883, at *9 (N.D. Ohio Apr. 18, 2013)); *see Garcia v. Comm'r of Soc. Sec.*, No. 1:13-cv-501, 2015 WL 869191, at *11 (W.D. Mich. Feb. 27, 2015) (rejecting the plaintiff's argument that SSR 82-59 applied because the ALJ did not make a finding that the plaintiff was disabled and nothing in SSR 82-59 "restricted the ALJ's ability to

I.      **Failure to Consider Plaintiff's Diabetes a Severe Impairment**

Plaintiff argues that the ALJ erred in concluding at step two that Plaintiff's diabetes mellitus was not a severe impairment.  (ECF No. 9 at PageID.962.)

A "severe impairment" is defined as an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 416.922(a).  Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error.  *Mariarz*, 837 F.2d at 244.  As the Sixth Circuit explained more recently:

> Though the ALJ concluded that Hedges did not have any severe mental-health impairments, the ALJ did find that Hedges suffered from four severe physical impairments.  And once an ALJ finds that a claimant has at least one severe impairment at step two of the disability analysis, the ALJ must then "consider the limiting effects of *all* [the claimant's] impairment(s), even those that are not severe" in evaluating the claimant's ability to work in step four. 20 C.F.R. § 404.1545(e) (emphasis added).  That is what the ALJ did here.  So whether the ALJ characterized Hedges' mental-health impairments as severe or non-severe at step two is "legally irrelevant" and does not amount to error.

*Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).  Here, at step two, the ALJ found that Plaintiff had severe mental impairments of major depressive disorder and bipolar disorder.  Thus, as explained in *Hedges*, it was "legally irrelevant" that the ALJ did not find that Plaintiff's diabetes was a severe impairment at step two, as the ALJ was required to consider the limiting effects of all Plaintiff's impairments at step four.

---

consider the impact plaintiff's noncompliance had on her credibility").  Here, there was no previous disability finding, and the ALJ did not find any of Plaintiff's impairments disabling.

7

Plaintiff contends that the ALJ should have included limitations secondary to Plaintiff's diabetes, including neuropathy, incontinence, and gastroparesis, in his RFC determination. (ECF No. 9 at PageID.962.) At step four, after recounting Plaintiff's testimony at the hearing, the ALJ found that Plaintiff's alleged symptoms were not entirely consistent with the medical and other evidence in the record, again noting Plaintiff's lack of compliance with his prescribed treatment:

> The objective evidence of record does not support the degree of limitation alleged by claimant. The undersigned cannot ignore the fact that claimant has not always been compliant with prescribed treatment, including taking medication and keeping follow-up appointments. Progress notes reveal that when claimant is compliant with treatment, his symptoms improve. Further, claimant testified that he was inquiring about school at Delta College, as he feels prepared to further his training. The record reveals that claimant has abused drugs and was arrested for simple battery. However, claimant testified that he is no longer using drugs and is taking medication as prescribed. While the undersigned is not suggesting that claimant does not have any limitations, the objective evidence does not support disability. The limitations supported by the record are accounted for in the residual functional capacity set forth above.

(PageID.49.)

While the ALJ recognized that Plaintiff's diabetes resulted in limiting symptoms, he appropriately considered that Plaintiff's noncompliance with his treatment regimen exacerbated them and that when Plaintiff was compliant, his symptoms improved. The Sixth Circuit recognizes that a claimant's failure to follow prescribed medical treatment is evidence bearing on the extent and disabling effects of the claimant's symptoms. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988); *see also* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017 (republishing SSR 16-3p from Mar. 16, 2016) (superseding SSR 96-7p)) (stating that "if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record").

The record is replete with treatment notes documenting Plaintiff's lack of compliance with his medical treatment. For example, on April 7, 2014, Plaintiff was seen by Renita Bryant, N.P., for uncontrolled diabetes resulting in blurred vision, fatigue, nocturia, weakness, and weight loss. Ms. Bryant noted that Plaintiff's compliance with treatment had been poor, with Plaintiff skipping some medication and insulin doses and failing to follow a diet and exercise regimen, failing to follow up as directed, and failing to perform home blood glucose monitoring and foot examinations. (PageID.597.) Ms. Bryant next saw Plaintiff seven months later, on November 10, 2014, when he presented with diabetic symptoms of gastroparesis and neuropathy. Ms. Bryant again noted poor compliance with treatment, including medication and insulin and failure to follow a proper diet and exercise regimen. (PageID.594.) Plaintiff saw Ms. Bryant again on July 22, 2015, for diabetes complicated by peripheral neuropathy. His compliance with treatment, diet, and exercise was again noted as poor. (PageID.672.) The previous day, July 21, 2015, Plaintiff reported to Brent Carr, M.D., during a psychiatric evaluation that he had not been taking his insulin. (PageID.888.) The next month, on August 27, 2015, Ms. Bryant saw Plaintiff for a toothache and noted that his compliance with his diabetes treatment had been "fair." (PageID.676.) In September 2015, after Plaintiff moved from Louisiana to Michigan, he reported to Elisia Grewe, F.N.P., that he had been out of his diabetes "meds for awhile." (PageID.694.)

Substantial evidence also supports the ALJ's finding that, when Plaintiff follows his prescribed treatment, his symptoms are improved and controlled. For example, Plaintiff was admitted to University Hospital over several days in late October to early November 2014 after Plaintiff reported suicidal thoughts and recurrent depression. (PageID.480.) Plaintiff reported that he had run out of insulin one week earlier (PageID.481) and had been off his psychiatric medications since January 2014. (PageID.502.) Plaintiff was diagnosed with hyperglycemia and

9

diabetic ketoacidosis. (PageID.487.) Plaintiff's acute symptoms, including his psychosis, resolved with medication and insulin. (PageID.487–88.) On November 19, 2014, Plaintiff reported to Erin Stanton, M.D. that his glucose was "under better control" and that he was applying for jobs. (PageID.581.) Plaintiff was subsequently admitted to the hospital for two days in late November 2016, after he moved back to Louisiana, with complaints of nausea, vomiting, and dizziness. Plaintiff reported that he had stopped taking his insulin a few days before due to lack of appetite related to tooth pain. (PageID.840.) Plaintiff was diagnosed with diabetic ketoacidosis. His symptoms resolved by discharge with use of insulin and medication. (*Id.*) On January 6, 2017, Plaintiff was seen by Susan Solley, N.P. Plaintiff was taking all his current medications and was in no acute distress. (PageID.732.) Plaintiff showed no positive musculoskeletal or neurological findings, other than chronic back pain, and no positive psychiatric findings. (PageID.733.) Subsequently, in March 2017, Plaintiff was referred for inpatient treatment due to suicidal thoughts and increased depression. (PageID.740.) Plaintiff was diagnosed with schizophrenia. (PageID.743.) Plaintiff's medications were adjusted, and he was educated on the importance of medication compliance. (PageID.932.) By discharge, Plaintiff's mental status examination showed a depressed mood and affect but no psychotic thought process. (PageID.940.)

Plaintiff's medical examinations also failed to corroborate his complaints of severe tingling in his hands and feet due to neuropathy. Often Plaintiff's treatment records contained no or negative neurological findings and no mention of complications from diabetes. (PageID.673–74; 678; 694–95 (no sensory exam abnormalities and no peripheral neuropathy noted); 693; 687; 831–32; 732.) The ALJ properly considered such evidence to conclude that Plaintiff's symptoms were not as severe as alleged. *See* SSR 16-3p, 2017 WL 5180304, at *5.

Plaintiff argues that the ALJ failed to consider that his noncompliance was due to reasons unrelated to disregard of his physicians' orders, including his lack of funds to pay for his medications, his lack of insight into his illness, his lack of transportation, and his homelessness. (ECF No. 9 at PageID.963–64.)  Those reasons may provide a valid excuse for noncompliance. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."); *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (agreeing that if "the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law") (internal quotation marks omitted); *Fite v. Comm'r of Soc. Sec.*, No. 1:17-cv-57, 2018 WL 791367, at *9 (S.D. Ohio Feb. 8, 2018) ("A claimant's non-compliance with prescribed medication is not a valid factor in assessing credibility when the claimant is unable to afford the medication.") (citing *Durham v. Comm'r of Soc. Sec.*, No. 1:07-cv-450, 2008 WL 3843296, at *7–8 (S.D. Ohio Aug. 14, 2008)), *report and recommendation adopted*, 2018 WL 1173034 (S.D. Ohio Mar. 6, 2018).

As for Plaintiff's lack of funds, Plaintiff reported on several occasions that he skipped some medication and insulin doses due to expense.  (PageID.600, 604, 607, 611, 672, 676.)  While the ALJ did not specifically address Plaintiff's alleged lack of financial resources to pay for his medications, he considered these records.  (PageID.46.)  However, the full record suggests Plaintiff's non-compliance had more to do with his lack of concern for his health than his lack of financial resources.  As the ALJ noted, Plaintiff also failed to follow a diet and exercise regimen and failed to follow-up and attend appointments.  This was particularly true, although not necessarily limited to, Plaintiff's mental health treatment.  On April 11, 2014, Plaintiff was discharged from his mental health services at Bastrop Mental Health Center for

11

noncompliance/failure to return for a follow-up appointment since January 14, 2014. (PageID.576.) On March 27, 2015, Plaintiff was a no-show for his therapy appointment. (PageID.889.) Plaintiff was a no-show for his medication appointment on March 31, 2015. (PageID.889.) On April 16, 2015, transportation notified therapist Shondranise Wright that Plaintiff was not home to be picked up for his appointment. (PageID.625.) On July 31, 2015, Plaintiff was a no-show for his appointment. (PageID.905.) Plaintiff also missed appointments on August 19 and August 24, 2015. (PageID.903–04.) On October 7, 2015, when Plaintiff missed another appointment, his girlfriend told Ms. Wright that Plaintiff had moved to Michigan and was not planning to return to the Bastrop area. (PageID.902.)

Plaintiff also cites no evidence indicating that he tried to take advantage of programs offering free or low-cost medication to indigent individuals. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) ("Although Riggins claims he could not afford such medication, there is no evidence to suggest that he sought any treatment offered to indigents . . . ."); *Castle v. Comm'r of Soc. Sec.* No. 2:14-cv0877, 2015 WL 1914436, at *6 (S.D. Ohio Apr. 27, 2015) ("There is no evidence in the record that the claimant ever attempted to visit a free medical clinic or requested prescription medication assistance."). In fact, Ms. Wright spoke to Plaintiff about options for obtaining his prescriptions for free, but Plaintiff declined.[4] (PageID.908; *see also* PageID.691 ("Strongly recommended this patient go to the ER. Patient refused.").)

---

[4] Plaintiff's medical records show that he consistently reported being an "every day" smoker and did not wish to stop. (PageID.677.) Plaintiff's smoking habit tends to refute his claim that he could not afford his medicine. *See Sias*, 861 F.2d at 480 ("Taking judicial notice of the monetary cost of [smoking], we calculate that the cost of the hose could have been covered by the savings claimant would realize if he gave up cigarettes."); *Robinson v. Comm'r of Soc. Sec.*, No. 14-12657, 2015 WL 5317213, at *11 (E.D. Mich. Aug. 6, 2015) (noting that the ALJ properly considered that "plaintiff's ability to fund on-going nicotine and alcohol habits undermined her assertion that she could not afford her prescription COPD medications"), *report and recommendation adopted*, 2015 WL 5317135 (E.D. Mich. Sept. 11, 2015).

Plaintiff also argues that the ALJ failed to consider Plaintiff's lack of insight resulting from his mental impairments as a cause of his noncompliance. Plaintiff points to his ongoing depression and psychotic symptoms that were present on the occasions that he received emergency treatment or was hospitalized due to his uncontrolled diabetic symptoms. However, except for the few instances of acute exacerbation of his symptoms, the medical records show that, aside from some depressed mood and affect, mental status examinations were generally normal. (PageID.602 (alert and oriented x3, good insight and judgment); 693 ("mental status exam was normal" with unimpaired thought process and content); 695 ("mental status exam was normal" with euthymic mood and normal affect); 832 (normal judgment and thought content); 888 (normal thought processes and insight into understanding of mental health problems and understanding of treatment options).) Contrary to Plaintiff's argument, the record does not support that Plaintiff's failure to take his medication was related to his depression or other mental impairment. *See Thornton v. Comm'r of Soc. Sec.*, No. 16-11717, 2017 WL 4969352, at *7 (E.D. Mich. May 17, 2017) (concluding that the ALJ did not err in failing to discuss whether the plaintiff's mental impairments impacted her ability to comply with her treatment where the evidence did not indicate that the plaintiff was mentally unable to understand her treatment).

Finally, Plaintiff's claim of homelessness—suggesting that he had no place to store his medications—is unfounded. Plaintiff had been living with his girlfriend in Louisiana until he moved to Michigan in the fall of 2015. (PageID.902.) When he moved to Michigan, he had a roommate, and he also kept his medicine at his uncle's house. (PageID.689, 691.) After Plaintiff moved back to Louisiana he lived with his mother and other family members. (PageID.170–71, 899.) Thus, the ALJ had no basis to conclude that homelessness impacted Plaintiff's failure to comply with his treatment.

**II.     Failure to Consider All Evidence Regarding Plaintiff's Mental Impairments**

Plaintiff argues that substantial evidence does not support the ALJ's RFC finding because the ALJ failed to consider all of evidence bearing on Plaintiff's mental issues, including treatment for suicidal ideation and/or attempt on two occasions, paranoia, anxiety, and depression. (ECF No. 9 at PageID.964.) RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. § 416.927(d). A claimant's RFC is the most that the claimant can do after considering the effects of all impairments on the ability to perform work-related tasks. 20 C.F.R. § 416.945. "The ALJ is charged with the responsibility of determining the RFC based on h[is] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

As set forth above, the ALJ properly considered Plaintiff's noncompliance with his treatment and found that Plaintiff's impairments were not as limiting as Plaintiff alleged. The ALJ further found that Plaintiff's symptoms improve when he complies with his treatment. These findings were supported by substantial evidence, including Plaintiff's treatment records. Plaintiff fails to show that his mental impairments impose on him any greater degree of limitation than the ALJ recognized.

Plaintiff further argues that the ALJ erred in relying on Dr. Kahler's March 10, 2015 opinion because Dr. Kahler did not review any of the evidence generated after that date, including Plaintiff second psychiatric hospital admission in 2017 and records reflecting on Plaintiff's treatment after that time. However, the ALJ's decision shows that he considered Dr. Kahler's opinion along with all the other evidence in the record. (PageID.49.) In fact, the ALJ referenced Plaintiff's 2017 hospitalization, as well as his subsequent treatment records.

Relatedly, Plaintiff argues that the ALJ erred in giving Dr. Kahler's opinion great weight but failing to explain why he did not incorporate Dr. Kahler's finding of moderate limitations in

14

concentrating, persisting, or maintaining pace into his RFC. Dr. Kahler opined that Plaintiff retained the "mental capacity for simple to moderately complex, low stress work, with limited social/interpersonal demands." (PageID.201.) The ALJ incorporated this opinion into the RFC by finding that Plaintiff could not perform complex tasks, should have only occasional interaction with others, and should work with things instead of people. (PageID.48.) Plaintiff's suggestion that Dr. Kahler's finding of moderate limitations in concentration, persistence, and pace required the inclusion of certain specific limitations or restrictions in the RFC at step 4 has been rejected by the Sixth Circuit. *See*, *e.g.*, *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016). In short, the ALJ's RFC finding was supported by substantial evidence.

### III.     Failure to Give the VE a Proper Hypothetical

Last, Plaintiff argues that the ALJ failed to give the VE a proper hypothetical because it did not address all of Plaintiff's well-established mental impairments and was based on the opinion of a consultant who failed to review significant portions of the medical evidence. While an ALJ may satisfy his burden using hypothetical questions posed to a vocational expert, the hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 f.3d 146, 150 (6th Cir. 1996). The hypothetical question the ALJ posed to the VE was proper, as it included the restrictions and limitations the ALJ found to be supported by the evidence as a whole. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014). The ALJ's RFC determination is supported by substantial evidence, and there was nothing incomplete or improper about the ALJ's hypothetical question. Accordingly, the Court concludes that the ALJ properly relied on the VE's testimony.

In sum, the Commissioner's decision was in accordance with applicable law and supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

An Order consistent with this Opinion will enter.


Dated: April 21, 2020                              /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge